425 So.2d 722 (1983)
COLONIAL BANK
v.
MARINA SEAFOOD MARKET, INC., et al.
No. 82-C-1243.
Supreme Court of Louisiana.
January 10, 1983.
Concurring Opinion February 9, 1983.
Rehearing Denied February 11, 1983.
Robert A. Mathis, Newman & Drolla, New Orleans, for applicant.
*723 Thomas J. Toranto, Jr., New Orleans, for respondents.
BLANCHE, Justice.
In this case, we are asked to determine whether a collateral mortgage is invalid because neither the hand note nor the collateral mortgage note were ever executed by the purported maker. Our original purpose in granting writs was to determine the validity of a collateral mortgage executed by a mortgagor to secure a true and existing debt where it appeared that the mortgagor had inadvertently failed to execute the collateral mortgage note. We do not reach that issue because we find, as did the trial court, that the mortgagor never intended that the mortgage secure any existing debt.
This suit was occasioned by the following circumstances: Colonial Bank, the plaintiff, filed a petition in executory process against Marina Seafood Market and various other defendants to collect on a $136,745 hand note allegedly secured by the pledge of a $75,000 collateral mortgage note, of which Colonial was the holder. The collateral mortgage note was secured by a collateral mortgage allegedly executed by the defendants on March 30, 1979. The note had been paraphed "ne varietur" for identification with the mortgage.
On October 8, 1980, Dolorerdeen Pomes and Philip Robin, two of the defendants and purported co-makers of the hand note and collateral mortgage note, respectively, sought to enjoin the seizure and sale of their homes under the executory proceedings brought by the plaintiff. Their petition alleged that the signatures appearing on the notes were not theirs. A preliminary injunction was issued to arrest the proceedings. Subsequently, Colonial amended its petition to convert the proceeding to one via ordinaria and asked that the court recognize the validity of its mortgage in the amount of $75,000 over the residential home of only one of the defendants, Philip Robin.
The trial court rendered judgment in favor of the defendant, holding that the collateral mortgage over his property was void. The court found that the collateral mortgage note had never in fact been signed by Philip Robin nor had he authorized anyone to sign it for him. The trial court reasoned that the mortgage was an obligation accessory to the principal obligation, and since the principal obligation was nonexistent, the mortgage was unenforceable. The court of appeal, 413 So.2d 1001 affirmed. We agree with the lower courts that the collateral mortgage is invalid. In our opinion, Colonial never established that Philip Robin had executed any note to establish the existence of any debt which could be secured by the mortgage. The accessory obligation, the mortgage, depends for its enforceability on the existence of a valid principal obligation. Since there is no principal obligation, the accessory obligation is unenforceable. Accordingly, we affirm.
The defendant testified that he did sign the collateral mortgage dated March 30, 1979. However, he believed the document to be a release granting to Bertrand Pomes and Ronnie Tardo the right to use his oyster properties during the off-season. Apparently, Pomes and Tardo, the owners of Marina Seafood Market, wanted these rights because "this would be a good piece of property ... so the bank would loan them `X' amount of dollars." All evidence indicates that Robin believed the collateral mortgage to be the document effecting that transaction for Pomes and Tardo.
The defendant unequivocally denied that the signature on the $75,000 collateral mortgage note was his and asserted that he never intended to be bound for the payment of such a sum at the penalty of losing his home. Additionally, he never received any of the proceeds and never executed or guaranteed the hand note for $136,745, the default of which precipitated this lawsuit. Handwriting specimens entered into the record showed that signatures known to be those of the defendant did not match that alleged to be his signature on the collateral mortgage note. A handwriting expert testified that, in his opinion, the signature on *724 the collateral mortgage note was not that of Philip Robin.
Further, the great weight of the evidence indicates that the defendant had absolutely nothing to do with the corporate defendant in this action, Marina Market Seafood, Inc., the principal maker of the hand note. Despite the claims of Colonial, it was never established that the defendant owned any shares of Marina Seafood. The testimony of Bertrand Pomes indicated that the defendant never intended to mortgage his home to secure the loan to the company. Robin only intended to help Pomes and Tardo obtain a loan from Colonial for oyster boats by leasing to them his oyster beds. It was never clearly established whether the defendant had prepared a disclosure statement for Colonial; however, it was clearly established that the defendant did not sign as guarantor on the hand note, the proceeds of which were ultimately used to procure the boats for Marina Seafood.
In sum, Colonial has failed to prove the existence of a principal obligation owed by the defendant, Philip Robin. No person may be held liable on a negotiable instrument unless his signature appears thereon. LSA-R.S. 10:3-401, 3-404; cf. Personal Finance, Inc. v. Simms, 123 So.2d 646 (La.App. 1st Cir.1961). Since the evidence was uncontroverted that the defendant did not sign the collateral mortgage note or empower anyone to do so for him, he owed no obligation. LSA-R.S. 10:3-403; Associates Financial Services of America, Inc. v. Lennix, 308 So.2d 878 (La.App. 4th Cir.1975). Colonial did not establish that Robin ratified the forgery of his signature, and we find that the defendant established the fraud by a preponderance of the evidence. LSA-R.S. 10:3-404; United Credit Plan of New Orleans, Inc. v. Franklin, 221 So.2d 334 (La.App. 4th Cir.1969). We find unpersuasive the argument of Colonial that La.Civ.Code art. 3299 renders the mortgage valid even if the principal obligation is declared null because the defendant gave the mortgage for the benefit of the principal debtor, Marina Seafood.[1] All evidence indicates that Robin had no intention of mortgaging his home to secure the debt for the benefit of Pomes, Tardo, and/or Marina Seafood.
Therefore, since there exists no principal obligation owed by the defendant, the accessory obligation, the mortgage, must be invalid and unenforceable. La.Civ.Code arts. 3284, 3285; Thrift Funds Canal, Inc., v. Foy, 261 La. 573, 260 So.2d 628 (1972); see generally Nathan, Collateral Mortgage, 33 La.L.Rev. 497 (1973). The accessory obligation created by the act of mortgage cannot serve as a foundation for a demand separate and distinct from the principal obligation. Li Rochi v. Keen, 242 La. 111, 134 So.2d 893 (1961).

DECREE
For the foregoing reasons, the judgments of the lower courts in favor of the defendant, Philip Robin, declaring invalid the collateral mortgage over his property are affirmed.
AFFIRMED.
LEMMON, J., dissents.
DIXON, C.J., dissents with reasons.
DENNIS, J., dissents for the reasons assigned by DIXON, C.J.
CALOGERO, J., concurs with reasons.
DIXON, Chief Justice (dissenting).
I respectfully dissent.
This writ was granted to determine whether the mortgage on Robin's home was a valid mortgage to secure the debt of a *725 third person. C.C. 3295-3299. Robin admitted his signature on the mortgage, but claimed that he was mistaken as to the character of the document; nevertheless, he said he knew the document would help his friends obtain a loan.
CALOGERO, Justice, concurring.
I concur in the majority opinion since it was not established that Robin's intention was to secure the debt of a third party. It is well settled that one may execute a mortgage to secure the debt of a third party. La.C.C. arts. 3295-3299. Thus, the absence of the mortgagor's signature from the note representing the indebtedness is not always fatal to the validity of the mortgage. However, in the instant case, the mortgage, which Robin signed, shows no such intention. To the contrary, the mortgage specifically provides that it was intended to secure a note executed by Robin. Since Robin did not sign that note, the majority is correct in its conclusion that there was no principal obligation owed by the defendant to which the accessory obligation might attach. For these reasons, I concur.
NOTES
[1] Art. 3299. Mortgage for debt of third person, absolute or relative nullity of principal obligation.

Although the nullity of the principal obligation includes that of the mortgage, that is to be understood, with respect to a person giving a mortgage for another, only insofar as the principal obligation is rescinded by an absolute nullity; for if the principal debtor has only obtained a recission by a plea merely personal, such as minority the mortgage given for him by a third person is not less valid and shall have its full and entire effect.