# STATE OF LOUISIANA

## COURT OF APPEAL, THIRD CIRCUIT

## 05-657


**JOHN AARON DUHON, ET AL**

**VERSUS**

**LAFAYETTE CONSOLIDATED GOVERNMENT**


**************

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NUMBER 2004-3599
HONORABLE PATRICK MICHOT, PRESIDING


*************

**SYLVIA R. COOKS**
**JUDGE**

**************


Court composed of Sylvia R. Cooks, Michael G. Sullivan, and James T. Genovese, Judges.


**REVERSED AND REMANDED.**


Hawkins & Villemarette, L.L.C.
Scott M. Hawkins
Chris Villemarette
102 Asma Boulevard
Saloom III, Suite 110
Lafayette, Louisiana 70508
(337) 233-8005
COUNSEL FOR PLAINTIFFS/APPELLANTS:
    John Aaron Duhon, et al.

Roy, Bivins, Judice, Roberts & Wartelle
Patrick M. Wartelle
Post Office Drawer Z
Lafayette, Louisiana 70502
(337) 233-7430
COUNSEL FOR DEFENDANT/APPELLEE:
    Lafayette City-Parish Consolidated Government

**COOKS, Judge.**

## STATEMENT OF THE CASE

This case arises out of a political dispute between City-Parish Councilman Lenwood Broussard and Linda Navarre Duhon, one of the thirty-five plaintiffs in this suit. Mr. Broussard and Mrs. Duhon have traveled a long and litigious road together beginning in 1999 when Mrs. Duhon was a candidate for the council seat held by Mr. Broussard. The following is a brief legal history of this dispute.

In September 1999, Mr. Broussard filed an action in district court objecting to the candidacy of Mrs. Duhon. The issue in that suit was whether Mrs. Duhon was a resident of Lafayette Parish and, thereby, eligible to run as a candidate for the Lafayette City-Parish Council in the primary election on October 23, 1999. The district court found Mrs. Duhon's residence, located at 101 Adola Road, Maurice, Louisiana, was within the boundary of Vermilion Parish and, therefore, Mrs. Duhon was ineligible to run for a seat on the Lafayette City-Parish Council. The trial court relied on the testimony of the parish engineer for Vermilion Parish, the assistant director of Public Works for Lafayette Parish and a licensed land surveyor. These witnesses testified, based on parish maps, that 101 Adola Road was shown to be located within Vermilion Parish. This court affirmed, specifically leaving open the question as to the exact location of the boundary between the two parishes. This court stated:

> Defendant also raised the exception of indispensable party arguing that the Lafayette Consolidated Government had an indispensable interest in the establishment of the boundary line between Lafayette and Vermilion Parishes. In the present case the trial court did not establish or change the parish boundary line, it merely made a factual determination based on expert testimony that Ms. Duhon's home was located in Vermilion Parish.

*Broussard v. Duhon*, 99-1426, p. 5 (La.App. 3 Cir. 9/21/99), 748 So.2d 14, 16, *writ denied*, 747 So.2d 1129 (La. 1999).

Subsequent to the appellate court decision, the State Tax Commission deleted John Aaron and Linda Navarre Duhon's residence from the tax rolls of Lafayette Parish, indicating on the form the Duhon's property was located in Vermilion Parish. In response, Mr. Duhon, along with twenty-four of his neighbors, filed a lawsuit in the United States District Court for the Western District of Louisiana. Named as Defendants were members of the Lafayette City-Parish Consolidated Government, members of the Vermilion Parish Police Jury, the Vermilion and Lafayette Parish tax assessors and registrars of voters, the State Land Office, the State Attorney General, and the Louisiana Tax Commissioner. The Plaintiffs asserted federal question jurisdiction pursuant to 42 U.S.C. § 1983. Specifically, the Plaintiffs alleged the Defendants violated their constitutional rights under the Fourteenth Amendment's Due Process Clause by conspiring to change the boundary line between Lafayette and Vermilion Parishes, thereby "exiling" them from Lafayette Parish and removing their names from the tax assessment and voter registration rolls of Lafayette Parish. The Plaintiffs asserted an Equal Protection violation "in that they are now being treated as residents of Vermilion Parish because Linda Navarre Duhon exercised her constitutional right to run for elective office within Lafayette." Additionally, the Plaintiffs alleged a violation of their First Amendment "rights to freedom of association within the political process and the school system of Lafayette Parish." The Plaintiffs alleged their "exile" was "for purely political reasons" and was done "in direct contravention of Louisiana statutes and constitutional provisions which establish substantive and procedural rights respecting the change of parish boundaries, and is a response to the qualification of Linda Duhon." The Plaintiffs requested injunctive relief and damages and sought to have their names reinstated on the Lafayette Parish tax assessment and voter registration rolls. The Defendants

3

argued neither the Constitution nor any federal statutes were violated, and therefore, the federal court lacks subject matter jurisdiction. The federal court agreed and dismissed the lawsuit, stating:

> Plaintiffs' allegations of constitutional violations of due process, equal protection and freedom of association are without merit. Because the plaintiffs have not alleged specific facts which constitute either a violation of clearly established constitutional rights under current law or under the law as clearly established at the time of the events in question, this Court has no subject matter jurisdiction.

*Duhon v. Consolidated Government of Lafayette, et al.*, Docket No. 00-CV-1690 (W.D.La. 3/27/01).

A judgment was signed in accordance with the decision dismissing with prejudice the Plaintiffs' claims under Title 42 §1983 and dismissing without prejudice the Plaintiffs' state law claims. The judgment of the federal district court was affirmed on appeal. *Duhon v. Consolidated Government of Lafayette*, 31 Fed. Appx. 838, C.A. 5 (La.), 2002, *cert. denied*, 536 U.S. 940, 122 S.Ct. 2621. Despite the lack of subject matter jurisdiction, the federal court opinion discussed in detail one of the issues raised by Plaintiffs, namely whether the Lafayette Consolidated Government followed the requirements of state law in establishing the boundary. This argument would be raised later in the Plaintiffs' state court suit for an injunction and declaratory judgment.

The Plaintiffs asserted two state statutes were at issue, La.R.S. 33:141 and La.R.S. 50:221. Louisiana Revised Statutes 33:141 mandates the procedure when a parish is changing an existing boundary, while Louisiana Revised Statutes 50:221-224 mandates the procedure when a parish is merely seeking to clarify an already existing boundary.

Louisiana Revised Statutes 33:141 provides, in relevant part:

> Whenever the police jury of any parish passes an ordinance *changing a boundary line* between it and any adjoining parish, it shall serve the

4

president of the police jury of the adjoining parish with a copy of the ordinance. If the police jury of the second parish concurs in the object and purposes of the ordinance, both police juries shall pass ordinances providing for *special elections to be held in both parishes within 60 days from the passage of the ordinances.*

Louisiana Revised Statutes 50:221 provides, in relevant part:

Whenever the governing authority of any parish desires to *ascertain and fix the boundary line* of any adjoining parish, *it shall pass an ordinance* to that effect fixing the time and place for starting the running of the boundary. It shall then serve the presiding officer of the governing authority of the adjoining parish with a copy of the ordinance and with notice, at lease six months in advance, of the time and place of starting the running of the boundary.

The federal court found La.R.S. 33:141 was inapplicable because the boundary between the parishes was never established by ground survey and the two parishes were seeking to clarify the boundary rather than change an existing boundary. Therefore, the court found Lafayette Parish and Vermilion Parish complied with the requirements of La.R.S.50:221. However, since the federal court ultimately found it lacked subject matter jurisdiction to hear the case, any discussion relative to this issue is non-binding dicta.

On April 16, 2002, Ordinance No. 088-2002 was adopted by the Lafayette Consolidated Government, (Vermilion Parish adopted similar ordinance on May 6, 2002) authorizing the State Land Office to re-establish the location of the parish boundary. In the ordinance, Lafayette Parish agreed to accept the findings of the State Land Office's survey and both parishes agreed to appropriate funds to pay for the survey. Additionally, the ordinance authorized the City-Parish President to enter into a Joint Cooperative Endeavor Agreement and Intergovernmental Agreement with the State Division of Administration State Land Office and the Vermilion Parish Police Jury for the surveying and re-establishing of the boundary line. On April 19, 2002, a Joint Cooperative Endeavor Agreement and Intergovernmental Agreement

5

was signed by Walter Comeaux of Lafayette Parish and Edval Simon of Vermilion Parish.

Upon completion of the survey by the State Land Office, on December 16, 2003, the Lafayette City-Parish Government, adopted Ordinance No. 0-307-2003. This ordinance accepted the findings and survey of the State Land Office which placed Adola Road within Vermilion Parish and directed the city-parish president to sign any documents finalizing the boundary.

On December 15, 2003, the Plaintiffs filed a Petition for Injunctive Relief in the Fifteenth Judicial District Court for the Parish of Lafayette, Docket Number 2003-6593, seeking to prohibit the Lafayette City-Parish Council from voting on and approving the State Land Office survey which re-established the boundary between Lafayette and Vermilion Parishes. The petition alleged: "On Tuesday, December 16, 2003, the Lafayette City-Parish Council is scheduled to vote and approve ordinance number 0-307-2003 which would move the boundary or as stated in the ordinance 're-establish' the boundary between Lafayette and Vermilion Parish such that these petitioners would be permanently exiled from Lafayette Parish." Further, the petition alleged, the petitioners would suffer irreparable damage should an injunction not issue. The Plaintiffs amended the petition seeking a declaratory judgment that the ordinance violates the Louisiana Constitution because "only the legislature may change parish boundaries and then only on approval by two-thirds vote of the electors in the each parish affected by the change in boundary." This argument, which relies on La.R.S. 33:141, was raised in the federal court suit.

On December 16, 2003, the trial court enjoined the ordinance from taking effect until a hearing was held on the Petition for Injunctive Relief. Following the January 12, 2004 hearing, the trial court rescinded the temporary restraining order and

denied the preliminary and permanent injunctions, thereby allowing Lafayette Parish Consolidated Government to move forward. On January 22, 2004, Ordinance No. 0-307-2003 became law without the signature of the City-Parish President.

On July 22, 2004, the Plaintiffs filed the present suit against the Lafayette Consolidated Government and the State Land Office in the Fifteenth Judicial District Court, Docket Number 2004-3599, entitled Petition to Revoke, Rescind and Reform. The petition alleges gross error on the part of the State Land Office. Plaintiffs allege the State Land Office relied on incorrect and inaccurate maps and surveys when determining the boundary and ignored relevant documents and data in its possession which would have placed Adola Road within Lafayette Parish. Additionally, the petition alleges fraud by the Lafayette City-Parish Consolidated Government in accepting the Lafayette-Vermilion boundary line drawn by the State Land Office. The Lafayette City-Parish Consolidated Government filed exceptions of vagueness, non-joinder of a party and res judicata. A hearing was held on the City's exceptions on September 20, 2004. The trial court held the suit was barred by res judicata, stating:

> According to the Code of Civil Procedure Article 425, "A party shall assert all causes of action arising out of the transaction or occurrence that is the subject matter of the litigation." This should have been brought up in a prior, and I'm going to grant the exception of res judicata.

The Plaintiffs filed this appeal. For the reasons assigned below, we reverse the decision of the trial court, and find this suit is not barred by the doctrine of res judicata. We remand for further proceedings.

### LAW AND DISCUSSION

Louisiana Revised Statutes 13:4231 provides, in relevant part:

> Except as otherwise provided by law, a valid and final judgment is conclusive between the same parties, except on appeal or other direct

7

review, to the following extent:

(1) If the judgment is in favor of the plaintiff, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and merged in the judgment.

(2) If the judgment is in favor of the defendant, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and the judgment bars a subsequent action on those causes of action.

(3) A judgment in favor of either the plaintiff or the defendant is conclusive, in any subsequent action between them, with respect to any issue actually litigated and determined if its determination was essential to that judgment.

Louisiana Code of Civil Procedure Article 425(A) provides, in relevant part:

A party shall assert all causes of action arising out of the transaction or occurrence that is the subject matter of the litigation.

In *Burguieres v. Pollingue*, 02-1385 (La. 2/25/03), 843 So.2d 1049, the Louisiana Supreme Court discussed the revisions to the res judicata statute and the requirements for finding a suit is barred by res judicata.

In *Burguieres*, Mr. Burguieres died leaving an olographic testament which was probated. The sister of the deceased, Mrs. Pollingue, was named as executrix. The decedent's children filed a petition to nullify the will and remove the executrix. The trial court annulled the testament, removed the executrix and appointed the decedent's son as administrator. The court of appeal affirmed the judgment.

The children of the decedent filed a second suit for damages and attorney's fees against Mrs. Pollingue, the former executrix, alleging breach of the fiduciary obligations as trustee. The executrix filed an exception of res judicata arguing the second lawsuit arose out of the same transaction and occurrence as the first. Therefore, plaintiffs were obligated to bring both actions at the same time and, thus, the second suit was barred by res judicata. The trial court denied the exception, reasoning the first suit sought to annul the testament while the present suit sought

8

damages for breach of fiduciary duty and attorney's fees. The appellate court reversed the judgment of the trial court finding the allegations of the second suit were connected to and arose out of the succession proceedings in the first suit. The Louisiana Supreme Court granted writs and held the second suit was not barred, stating:

> Most of the controversy and confusion in Louisiana surrounding res judicata prior to the 1990 amendment concerned whether there was an "identity of cause." With the 1990 amendment to the res judicata statute, however, the chief inquiry is whether the second action asserts a cause of action which arises out of the transaction or occurrence that was the subject matter of the first action. *Avenue Plaza* at p. 6, 676 So.2d at 1080. *See also* La.R.S. 13:4231 cmt. a (1990). *While this is the central inquiry under the current statute, it is not the only inquiry.* A reading of La. R.S. 13:4231 reveals that a second action is precluded when *all* of the following are satisfied: (1) the judgment is valid; (2) the judgment is final; (3) the parties are the same; (4) the cause or causes of action asserted in the second suit existed at the time of final judgment in the first litigation; and (5) the cause or causes of action asserted in the second suit arose out of the transaction or occurrences that was the subject matter of the first litigation.

*Id.* at 1053 (emphasis added).

The supreme court found, although the cause of action asserted in the second suit arose out of the transaction or occurrences that was the subject matter of the first litigation, a defendant must additionally meet the other requirements under La.R.S. 13:4231 in order for res judicata to apply. In that case, the court held Mrs. Pollingue did not appear in the same capacity in the second suit as in the first; therefore, under La.R.S. 13:4231, "[b]ecause of this difference in capacities, there is a lack of identity of the parties between the two suits" and the requirements of the statute are not met. *Id.* at 1056.

In the present suit, the Defendants contend "[a]t the time that the plaintiffs filed that second suit [for injunction], which was heard by Judge Duplantier, they were aware that the State Land Office had done the survey and had prepared a map. The

map was to be presented at a public City-Parish Council meeting with the boundaries clearly marked. Despite this knowledge, they did not challenge the accuracy of the map or claim that fraud was involved in its preparation." Therefore, the Defendants argue, under the statute the Plaintiffs were bound to assert any and all causes of actions against Lafayette Consolidated Government and the State Land Office which existed at the time of the suit for an injunction. Since the Plaintiffs failed to assert a cause of action challenging the accuracy of the maps or fraud on the part of the City, then, under the statute any subsequent suit is barred by res judicata. We will examine the Defendants' argument in light of the requirements articulated in *Burguieres*.

The first state court lawsuit litigated the eligibility of Mrs. Duhon as a candidate for a seat on the Lafayette City-Parish Council. This court affirmed the factual determination of the trial court that Ms. Duhon's home was located in Vermilion Parish. The issues in the present suit were not raised or litigated in the previous state court action. Moreover, the Lafayette Consolidated Government and the State Land Office were not parties to that suit. It was only after the state court judgment was final did Lafayette Consolidated Government initiate steps to determine the boundary line between Lafayette and Vermilion Parishes by contracting with the State Land Office to perform a survey. Moreover, the Louisiana Tax Assessor and Registrar did not remove the Plaintiffs from the roles until after the state court decision was final.

The Plaintiffs then brought suit in federal court alleging violations of their constitutional rights. The federal court found it did not have subject matter jurisdiction because no constitutional provision or federal statute were violated. Therefore, issues raised in the present suit were not litigated or decided in the federal court suit.

The Plaintiffs then filed a Petition for Injunctive Relief, seeking to enjoin the ordinance from taking effect and alleging permanent, irreparable injury. The petition was amended, seeking a declaratory judgment that Ordinance 0-307-2003 was unconstitutional because under state law a change in parish boundary lines must be approved by a vote of the electors in each affected parish. Following a hearing, the trial court rescinded the temporary restraining order and denied the permanent injunction. The judgment is silent with regard to the Plaintiffs' request for a declaratory judgment.

When a judgment is silent as to part of the relief requested, the judgment is deemed to have denied that relief. *Guaranty Bank & Trust Co. of Alexandria, La. v. Carter,* 394 So.2d 701 (La.App. 3 Cir.), *writ denied*, 399 So.2d 599 (La.1981). Therefore, Plaintiffs' claim for declaratory judgment that Ordinance 0-307-2003 is unconstitutional is deemed denied because the trial court did not address it in the judgment denying their requests for injunctive relief, and their failure to appeal the denial resulted in a final judgment. *Id. See also* La.Code Civ.P. art. 1871.

However, the judgment of the trial court denying the injunction and allowing the ordinance to become law is an interlocutory ruling and not a determination on the merits. *Jo Ellen Smith Psychiatric Hospital v. Harrell,* 546 So.2d 886 (La.App. 1 Cir. 1989). Therefore, the primary requirement of the statute, namely a final judgment on the merits, is not present. Moreover, under *Burguieres*, in order for res judicata to bar a subsequent suit, the cause of action asserted in the second action must have existed at the time of the final judgment in the first litigation. In this case, the Plaintiffs' claims against the State Land Office and the Lafayette Consolidated Government for fraud or inaccuracy in preparation of the survey did not arise until the ordinance took effect and the survey by the State Land Office was finally adopted. *See Tower*

11

*Partners, L.L.C. v. Rao*, 03-665 (La.App. 4 Cir. 1/21/04), 869 So.2d 126, *writ denied*, 869 So.2d 889, 04-445 (La. 4/2/04). When the Plaintiffs were unsuccessful in preventing the ordinance from taking effect, they filed suit claiming fraud or mistake on the part of the government officials. *Id.* We find the present suit is not barred by res judicata. Therefore, the decision of the trial is reversed and the matter is remanded for further proceedings.

### DECREE

Based on the foregoing review of the evidence, the decision of the trial court is reversed and the matter is remanded for further proceedings.

**REVERSED AND REMANDED.**